IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CHRIS HANNIBAL and LEANNA HANNIBAL,                                            PLAINTIFFS
Individually and as Co-Personal Representatives
of the Estate of Krista Sue Hannibal, Deceased

v.                                     No. 4:16CV00904 JLH

TRW VEHICLE SAFETY SYSTEMS, INC.                                           DEFENDANT

**OPINION AND ORDER**

Krista Hannibal was killed in an automobile accident in 2007 when her 1997 Ford Explorer left the road and rolled over. TRW Vehicle Safety Systems, Inc., manufactured the seatbelt in that Explorer. The plaintiffs assert claims for strict liability, negligence, and breach of warranty, all based on the allegation that the seatbelt system was defectively designed.

Several motions are pending. TRW has moved to exclude the opinion testimony from the plaintiffs' expert, Steven Meyer, regarding the manner in which the seatbelt system failed. In a companion motion, TRW seeks summary judgment on the plaintiffs' product liability claims, arguing that after Meyer's testimony is excluded, the plaintiffs will be unable to establish a prima facie case. TRW has also moved to exclude the loss of life testimony of Dr. Rebecca Summary. In addition, TRW has moved to exclude statements made by TRW in a report authored by a group headed by James Chamberlin, which was sent to Ford. Finally, TRW has moved for summary judgment on the plaintiffs' claims that Krista suffered conscious pain and suffering.

For their part, the plaintiffs have filed a motion seeking to exclude the testimony of TRW's experts, Gerald Corwin and Thomas McNish.

The use of expert evidence in federal court is governed by Federal Rule of Evidence 702, as interpreted by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, the Court must ensure that a proffered expert is qualified by his knowledge, skill, experience, training, or education before that person may testify as an expert. Besides examining a proffered expert's qualifications, the Supreme Court stated in *Daubert* that the trial judge also has a gatekeeping responsibility to ensure that expert evidence is both relevant and reliable before admitting it. *Daubert*, 509 U.S. at 589, 113 S. Ct. at 2795; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S. Ct. 1167, 1171, 143 L. Ed. 2d 238 (1999). Regarding relevancy, the Supreme Court stated that Rule 702 requires the proffered expert testimony to relate to an issue in the case and also to be sufficiently tied to the facts of the case, *i.e.*, that the expert testimony has appropriate "fit." *Daubert*, 509 U.S. at 591, 113 S. Ct. at 2795-96; *see also Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 694 (8th Cir. 2001). As to reliability, the Supreme Court stated that the inquiry envisioned by Rule 702 is a "flexible one." *Daubert*, 509 U.S. at 594, 113 S. Ct. at 2797. The inquiry should focus on the principles and methodology the expert uses and not on the conclusions generated. *Id*. at 595, 113 S. Ct. at 2797. The *Daubert* Court gave four factors that should guide a district court's analysis: (1) whether the theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) in the case of a particular scientific technique, what the known or

2

potential rate of error is and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory has received "general acceptance" in the relevant scientific community. *Id*. at 593-94, 113 S. Ct. at 2796-97. The Court noted that many factors will bear on the inquiry and that the four factors given above should not be taken as a "definitive checklist or test." *Id*. at 593, 113 S. Ct. at 2796; *Kumho Tire*, 526 U.S. at 141-42, 119 S. Ct. at 1171. In addition to the four factors explicitly listed by the Supreme Court in *Daubert*, courts after *Daubert* have noted additional relevant factors, including "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." *Lauzon*, 270 F.3d at 687 (citing cases).

The trial court's role is not to determine whether an expert's opinion is correct; it is an expert witness's methodology, rather than his conclusions, that is the primary concern of Rule 702. *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001). "'[E]ven if the judge believes there are better grounds for some alternative conclusion, and that there are some flaws in the scientist's methods, if there are good grounds for the expert's conclusion it should be admitted . . . .'" *Id*. (quoting *Heller v. Shaw Indus.*, 167 F.3d 146, 152-53 (3d Cir. 1999)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596, 113 S. Ct. at 2798. "Rule 702 favors admissibility if the testimony will assist the trier of fact, and doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998) (citation and quotation omitted). "Only if an expert's opinion is 'so fundamentally unsupported that it can offer no

assistance to the jury' must such testimony be excluded." *Hose v. Chicago Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995) (quoting *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988)).

The proposed testimony by the plaintiffs' expert, Steven Meyer, on the failure of the restraint system, the defense expert, Gerald Corwin, as to how the accident occurred, and the defense expert, Thomas McNish, on how the injuries occurred, satisfies the requirements of Rule 702 and the *Daubert* standards. Each of these experts has scientific and technical knowledge that will help the jury understand the evidence and determine facts that are at issue. The testimony of each of these experts is based upon sufficient facts and data, is the product of reliable principles and methods, and is the result of reliable application of the principles and methods to the facts of the case. Mindful of the Court's gatekeeping obligation, and also mindful that it is not the Court's role to determine whether an expert's opinion is correct, the Court has no hesitancy in concluding that the proposed testimony of these three expert witnesses meets the *Daubert* standards.

Not so with respect to the testimony of Dr. Rebecca Summary on loss of life damages. Dr. Summary proposes to testify regarding Krista's loss of life damages using a method known as the "value of a statistical life." Arkansas law provides that in addition to other elements of damages, "a decedent's estate may recover for the decedent's loss of life as an independent element of damages." Ark. Code Ann. § 16-62-101(b). The Arkansas Supreme Court has construed the statute to allow for damages that a decedent would have placed on her own life. *Durham v. Marberry*, 356 Ark. 481, 492, 156 S.W.3d 242, 248 (2004). An estate seeking loss of life damages must present some evidence that the decedent valued her life from which a jury could infer that value and on which it could base an award of damages. *One Nat'l Bank v. Pope*, 372 Ark. 208, 214, 272 S.W.3d 98, 102 (2008).

4

No court applying Arkansas law has ruled as to whether expert testimony may be admitted to assist the jury in determining loss of life damages. An overwhelming majority of courts from other jurisdictions, however, have concluded that the methodology adopted by Dr. Summary does not meet the *Daubert* standards and may not be admitted into evidence. *Smith v. Jenkins*, 732 F.3d 51, 66 (1st Cir. 2013); *Kurncz v. Honda North America, Inc.*, 166 F.R.D. 386, 388-89 (W.D. Mich. 1996). Dr. Summary explains in her report that the value of a statistical life methodology is based upon the trade-off between risk and money. It involves the assignment of monetary values to death risks based upon how much persons are willing to spend for a small reduction in the risk of death. Dr. Summary's value here is based upon government studies used to assign values to human lives in conducting cost/benefit analyses for potential government projects. The First Circuit in *Smith* has explained why this is not a reliable methodology for determining the value of a human life. 732 F.3d at 66-67. In addition to being unreliable, Dr. Summary's analysis would not assist the jury in determining what value Krista Hannibal placed on her own human life. It has nothing to do with Krista specifically. *Cf. id.* at 67 ("Even assuming that Dr. Smith's formula is a reliable measure of the value of life, it was of no assistance to the jury in calculating Smith's loss of enjoyment of life.").

Dr. Summary will not be permitted to testify regarding loss of life damages based upon the value of a statistical life.

TRW has also filed a motion to exclude statements made in a report sent by TRW to its customer, Ford Motor Company, regarding occupant restraint systems. In that report, TRW stated, "Conventional retractors can, in fact, experience intermittent release of webbing during rollovers." TRW argues that the author of that report was not qualified to give that opinion, that the opinion was based upon an unreliable report authored by plaintiffs' expert, David Renfroe, and that the statement

5

is irrelevant because it did not concern TRW's safety belts. These arguments are without merit. The statement, made in the context of a report sent by TRW to Ford regarding occupant restraint systems, is an admission by Ford under Federal Rule of Evidence 801(d)(2). At the time the statement was made, TRW manifested a belief that it was true and that the person who made the statement had the expertise necessary to speak on the subject. Furthermore, the statement is relevant because it was made in the context of a document explaining to its customer, Ford, what could and should be done by TRW and Ford to mitigate injuries caused by rollovers. That the statement was made in this context manifests a belief by TRW that it was relevant to TRW's restraint systems.

Finally, TRW has moved for summary judgment on plaintiffs' claim for damages for conscious pain and suffering suffered by Krista. TRW argues that there is no evidence that Krista had any conscious pain and suffering between the time of injury and death. While there is no direct evidence that she had conscious pain and suffering, there is, as the plaintiffs' argue, circumstantial evidence from which a jury could infer that Krista had conscious pain and suffering between the time of injury and her death.

## CONCLUSION

For the reasons stated, TRW's motion to exclude the testimony of expert Steven Meyer is DENIED. Document #49. Because that motion is denied, TRW's motion for summary judgment on product liability claims also is DENIED. Document #46.[1] The plaintiffs' motion to exclude testimony of the defendant's experts is DENIED. Document #45. TRW's motion to exclude the loss of life testimony of Dr. Rebecca Summary is GRANTED. Document #37. TRW's motion to

---

[1] The plaintiffs, however, conceded any claims for manufacturing defects. Based on their concession, any claims for manufacturing defects are hereby dismissed.

exclude James Chamberlin's seatbelt statements is DENIED. Document #39. TRW's motion for summary judgment on alleged conscious pain and suffering damages is DENIED. Document #41.

IT IS SO ORDERED this 9th day of August, 2018.

                                         */s/ J. Leon Holmes*
                                         J. LEON HOLMES
                                         UNITED STATES DISTRICT JUDGE